UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:02-cv-1232-DFH-TAB |
| | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction.**

Defendant Department of Corrections ("DOC") fired Plaintiff Robert Martin twice, the second time coming after the DOC rehired Martin pursuant to a last chance agreement. Martin maintains that his first termination was because of his race, and that his second termination was in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[1] The DOC filed a motion for summary judgment on both claims. According to the DOC, Martin's race and retaliation claims fall short because Martin failed to perform his job satisfactorily and because Martin cannot demonstrate that similarly situated non-African-American employees, or similarly situated employees that did not engage in protected activity, were treated more favorably. In addition, the DOC argues that Martin's retaliation claim must fail because no direct evidence of retaliation exists. For the reasons stated below, the

---

[1] There is some confusion over whether Martin also alleges a race discrimination claim with respect to his second termination. However, "Martin concedes that his second EEOC complaint alleges only retaliation and does not assert racial discrimination as a motive for his [second] termination." [Docket No. 99, p. 2 n.1].

Magistrate Judge recommends that the DOC's motion for summary judgment be granted.

**II.     Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Illinois Cent. R. Co. v. South Tec Development Warehouse, Inc., 337 F.3d 813, 816 (7th Cir. 2003). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" Fritcher v. Health Care Service Corp., 301 F.3d 811, 815 (7th Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Michael v. St. Joseph County, 259 F.3d 842, 845 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts. See Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001). A scintilla of evidence in support of the non-movant's position is not sufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

**III.    Background.**[2]

The DOC hired Martin as a correctional officer at the Plainfield Correctional Facility ("PCF") in June 1995. [Martin Dep., pp. 8-9]. Martin received copies of the DOC's sexual harassment policy and leave policy at that time. [Def.'s Ex. B, No. 11]. Throughout Martin's tenure at the PCF, the facility's superintendent was Christopher Meloy. [Def.'s Ex. B, No. 15].

Martin was not a model employee. The DOC's Internal Affairs department conducted several investigations regarding Martin's conduct. [Def.'s Ex. B., Nos. 10, 11]. One such investigation resulted in charges that Martin harassed and intimidated an inmate, prompting a five-day suspension without pay in March of 2000. [Def.'s Ex. B, No. 10]. On August 21, 2000, Meloy issued Martin a three-day unpaid suspension for violation of the DOC Standards of Conduct for Martin's use of inappropriate language to a supervisor in the Health Services Unit on July 5, 2000. [Def.'s Ex. B., Nos. 10, 11; Def.'s Ex. F].

Martin also had multiple violations of the DOC's leave policy. [Def.'s Ex. B, No. 10]. On December 11, 1998, Captain C. King sent a memo to Martin regarding a pattern of abuse of sick leave. [Def.'s Ex. B., No. 10; Def.'s Ex. C]. Thereafter, on December 15, 1998, Martin received a written reprimand regarding his unauthorized leave on December 10 and 11, 1998. [Def.'s Ex. B, Nos. 10, 11; Def.'s Ex. D]. On September 21, 1999, Major R. Curry issued a memo to Martin regarding a pattern of abuse of sick leave. [Def.'s Ex. B, No. 10; Def.'s Ex. E]. Curry informed Martin in this memo that Martin would be charged unauthorized leave if Martin did not have accrued sick or vacation leave to cover his absences, unless he qualified for leave under the Family and Medical Leave Act or Americans with Disabilities Act. [Def.'s Ex. E]. In

---

[2]The facts are either undisputed or viewed in a light most favorable to Martin, the non-moving party. In addition, this background section is a brief overview of the facts and is not meant to be an exhaustive recitation of all material facts in this case.

addition, Curry reminded Martin that unauthorized leave is subject to disciplinary action up to and including dismissal.  [Def.'s Ex. E].  Exactly one year later, on September 21, 2000, Martin received another written reprimand for taking unauthorized leave on September 19, 2000.  [Def.'s Ex. B, Nos. 10, 11; Def.'s Ex. G].  In this reprimand, Curry warned Martin that "any recurrence of a similar nature shall almost certainly precipitate more severe disciplinary action."  [Def.'s Ex. G].

Martin's attendance problems, however, did not cease.  Martin missed work on March 21, March 30, March 31, April 2, and April 23, 2001.  [Def.'s Ex. B, No. 10].  Martin's supervisor originally recommended approval for the March 21 leave.  [Pl.'s Ex. F].  However, Martin did not have any accrued leave time to cover these absences and was charged with unauthorized leave.  [Def.'s Ex. B, No. 10; Def.'s Ex. H].

The DOC utilizes a progressive discipline schedule for each instance of unauthorized leave.  [Def.'s Ex. I, p. 13].  Pursuant to the leave policy, the first instance of unauthorized leave results in a written reprimand.  The second and third instances of unauthorized leave result in written reprimands in lieu of suspensions of one and three days respectively.  With respect to the fourth instance, the policy recommends a five-day suspension.  Finally, with the fifth instance, termination is recommended.  [Def.'s Ex. I, p. 13].  In addition, five consecutive days of unauthorized leave is grounds for dismissal.  [Def.'s Ex. I, p. 14].  With respect to consecutive days of unauthorized leave, the policy provides:

> Employees receiving consecutive UL days may subject themselves to that level of Progressive Discipline as outlined above.  Example: Employee receives three (3) consecutive UL days, this employee may be subjected to a pre-deprivation meeting and is subject to a written reprimand in lieu of a three (3) day suspension.

[Def.'s Ex. I, p. 14].  Finally, if an employee is subject to a reprimand in lieu of suspension or dismissal, prior disciplinary actions may be considered in determining the

appropriate level of discipline. [Def.'s Ex. I, p. 14].

On May 9, 2001, Meloy held a pre-disciplinary meeting regarding Martin's absences. At the meeting, Martin conveyed that on March 30 and 31, he had requested time off to attend his aunt's funeral and had received verbal approval to do so. Meloy concluded that Martin "had no accrued days to cover the absences," but gave Martin "the benefit of the doubt for the dates of March 30 and 31." [Def.'s Ex. H]. Nonetheless, Martin determined that the unauthorized leave on March 21, April 2, and April 23 was grounds for dismissal. [Def.'s Ex. H]. That same day, Meloy issued to Martin a thirty-day suspension, effective May 10, 2001, with Martin's dismissal effective June 10, 2001. [Def.'s Ex. B, Nos. 10, 14; Def.'s Ex. H]. In making the decision to terminate, Meloy considered the fact that Martin had been given several opportunities to improve his attendance but continued to violate the leave policy by being absent without accrued leave to cover such absences. [Def.'s Ex. B, Nos. 15, 16; Def.'s Ex. H]. In addition to Martin's attendance violations, Meloy considered Martin's past conduct and discipline as background information. [Def.'s Ex. B, No. 16]. Martin filed a charge with the EEOC alleging the DOC discriminated against him on the basis of race by terminating his employment. [Def.'s Ex. S].

Pursuant to a last chance union settlement agreement, Martin returned to his position as a correctional officer on March 18, 2002. The DOC simultaneously transferred Martin to the Reception Diagnostic Center ("RDC"). [Def.'s Ex. B, No. 10]. Within several weeks of returning to work, Martin accrued five instances of unauthorized leave at RDC, including March 27, 2002; March 28, 2002; March 30, 2002; April 1, 2002; and April 2, 2002. [Def.'s Ex. B, No. 10; Def.'s Exs. J, K, L, M, N]. Lieutenant Larry Mathis referred the unauthorized leave to Major Cheatham for a pre-deprivation meeting. [Def.'s Ex. B, No. 10; Def.'s Ex. N].

Before the pre-deprivation meeting regarding Martin's unauthorized leave, PCF notified

5

RDC that a previous investigation of sexual harassment by Martin at PCF had been substantiated. [Def.'s Ex. B, No. 10]. Upon completion of the sexual harassment investigation, Martin had already been terminated from PCF for unauthorized leave, so no disciplinary action had been taken relating to the sexual harassment. [Def.'s Ex. B, No. 10]. After Martin was reinstated, RDC addressed the sexual harassment issue. Accordingly, on April 23, 2002, Assistant Superintendent of RDC Tom Hanlon issued a Notice of Pre-Deprivation Meeting regarding the sexual harassment incident. [Def.'s Ex. B, No. 10; Def.'s Ex. O].

Hanlon held a pre-disciplinary meeting on the sexual harassment charges on May 3, 2002. [Def.'s Ex. B, No. 10]. According to the charges, on February 26, 2001, while in the PCF kitchen, Martin "made a gesture to kiss a secretary" and suggested that she and Martin should be "secret lovers." [Def.'s Ex. R]. Martin denied the charges, claiming that he did not know the individual who made the complaint or anything else of the alleged incident. [Def.'s Ex. R]. However, the duty roster indicated that Martin was assigned to the kitchen on February 26, 2001. [Def.'s Ex. R; Pl.'s Ex. N]. The DOC's personnel policy states that "individuals found to have engaged in sexual harassment will be severely disciplined, up to and including discharge." [Def.'s Ex. Q]. As a result of the pre-disciplinary meeting, Hanlon determined that the sexual harassment charges were sufficient grounds for termination and placed Martin on a thirty-day suspension pending his June 7, 2002 termination. [Def.'s Ex. B, Nos. 10, 14, 15; Def.'s Ex. R]. In making the decision to terminate Martin, Hanlon considered the findings of the sexual harassment investigation, the sexual harassment policies, the seriousness of the offense, and Martin's active discipline.[3]  [Def.'s Ex. B, No. 16].

---

[3]In addition to Martin's unauthorized leave, Martin was cited for dereliction of duty on April 25, 2002 for failing to remain alert and failing to devote his full attention to his duty while assigned to an escort detail in the medical unit. [Def.'s Ex. P]. The dereliction of duty matter was referred to Hanlon for a pre-deprivation meeting. [Def.'s Ex. P].

**IV. Discussion.**

    **A. Race Discrimination.**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's race. 42 U.S.C. § 2000e-2(a). "'A Title VII plaintiff can satisfy her burden of proof by two avenues: (1) she may present direct evidence of discriminatory intent or, because of the difficulty in directly proving discrimination, (2) she may use the indirect, burden-shifting procedure set forth in McDonnell Douglas . . . .'" Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1029 (7th Cir. 2003), quoting Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1031 (7th Cir. 1998). Since Martin presents no direct evidence of race discrimination, he proceeds under the McDonnell Douglas framework.

To establish a prima facie case of race discrimination, Martin must demonstrate that: (1) he belongs to a protected class; (2) he was meeting the DOC's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 530 (7th Cir. 2003). The DOC concedes that Martin belongs to a protected class and that he suffered an adverse employment action. However, as noted above, the DOC argues that Martin fails to establish a prima facie case because Martin did not satisfy the DOC's legitimate job expectations and because Martin has not pointed to admissible evidence that would allow the Court to reasonably infer that similarly-situated, non-African-American employees were treated more favorably. The Court addresses each in turn.

The DOC claims that, at the time of his initial termination, Martin was not performing his job satisfactorily because he had been the subject of "several Internal Affairs investigations,"

7

that Martin had twice been suspended, and that he had multiple violations of the DOC's leave policy. [Docket No. 97, pp. 13-14]. Highlighting past performance evaluations and pay raises, Martin reaches the opposite conclusion, arguing instead that his attendance had "significantly improved." [Docket No. 99, pp. 2, 4, 7]. In addition, Martin claims that his "job performance met the reasonable expectations of DOC, as he had only received several citations prior to May 9, 2001." [Docket No. 99, p. 3]. The Court finds Martin's argument that he performed adequately because he had "only received several citations" somewhat odd and self-defeating. However, the Court makes no determination on this issue. When a plaintiff admits that he broke the rules but alleges that other rule-breakers outside the protected class were treated less harshly, "[i]t makes little sense in this context to discuss whether [he] was meeting [his] employer's legitimate expectations." Flores v. Preferred Technical Group, 182 F.3d 512, 515 (7th Cir. 1999). Accord Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001); Oest v. Illinois Dep't of Corr., 240 F.3d 605, 612 n.3 (7th Cir. 2001). This is essentially the case here. It is undisputed that Martin violated the DOC's attendance policy and that the DOC terminated him. However, Martin alleges that several non-African-American correctional officers had also violated the DOC's attendance policy but were not treated as harshly. Accordingly, the Court proceeds to the final prong of the prima facie analysis: whether similarly-situated, non-African-American employees were treated more favorably.

"In disciplinary cases, those cases in which the plaintiff claims he or she was disciplined more harshly than another employee based on a prohibited reason, the plaintiff must show that he or she is similarly situated with respect to performance, qualifications and conduct." Ezell v. Potter, 400 F.3d 1041, 1049 (7th Cir. 2005). To meet this burden, Martin must produce evidence "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating

8

circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). Martin fails to carry this burden.

Martin's entire argument regarding the similarly situated prong of the analysis is stated in one sentence. Martin concludes that "[w]ith regard to element (4), Martin has indeed established that similarly situated employees outside of Martin's class were not terminated or only minimally suspended for similar violations of attendance policies." [Docket No. 99, p. 7]. In reaching this conclusion, Martin points to his own deposition testimony and a letter from the DOC to the EEOC responding to Martin's charge. Neither is sufficient to carry Martin's evidentiary burden.

With respect to Martin's deposition testimony, the Seventh Circuit has repeatedly "upheld the entry of summary judgment against a Title VII plaintiff who has presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently." Oest v. Illinois Dep't of Corr., 240 F.3d 605, 614 (7th Cir. 2001), citing Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 377 (7th Cir. 1998); Cowan v. Glenbrook Sec. Servs., Inc., 123 F.3d 438, 446 (7th Cir. 1997). Such is the case here. Although Martin identifies several corrections officers that he believes were treated better, his testimony is nothing more than conclusory assertions. "[S]uch uncorroborated generalities are insufficient to support a Title VII claim." Oest, 240 F.3d at 615.

Moreover, Martin's reliance on the DOC's letter to the EEOC does not supply the requisite corroboration. The DOC letter provides an itemized response to Martin's EEOC charge. In response to Martin's allegation that "Officer Young . . . has been suspended on more than three different occasions, yet he was not discharged," the DOC states that "Officer Edward Young has been suspended one (1) time." [Pl.'s Ex. L, p. 2]. The DOC's cursory statement regarding Officer Young's sole suspension gives no information regarding Young's supervisor,

9

his overall performance and disciplinary history, the nature of the infraction for which he was disciplined, or any other information regarding Young or his conduct. In short, Martin's reliance on the DOC's letter does not satisfy Martin's evidentiary burden. Accordingly, Martin fails to establish a prima facie case of race discrimination, and the DOC is entitled to summary judgment on that claim.

Even assuming that Martin satisfied his prima facie burden, summary judgment remains appropriate because Martin cannot demonstrate that the DOC's stated reason for Martin's dismissal is pretext. As noted above, Meloy made the decision to terminate Martin based on his multiple occurrences of unauthorized leave and Martin's past disciplinary history. Because Martin does not have direct evidence of pretext, he must establish that the stated reason for his termination "is merely a pretext for discrimination by showing that [the DOC's] reason is: (1) factually baseless; (2) not the actual motivation for the discipline; or that it is (3) insufficient to motivate the discipline." Wade v. Lerner New York, Inc., 243 F.3d 319, 323 (7th Cir. 2001). Martin fails in each respect.

First, it is undisputed that Martin had performance issues. Martin has not alleged that he actually had accrued leave to cover his absences or that the DOC "made up" or otherwise exaggerated his disciplinary history. Second, Martin has not produced any credible evidence that questions the motivation behind the DOC's reasons for Martin's termination. Relying on the decision of an administrative law judge with the Indiana Department of Workforce Development, Martin suggests that the "DOC did not follow correct procedures in terminating Martin because they jumped from step 1 to step 5." [Docket No. 99, p. 3]. "However, the nature of the proceeding to determine eligibility for unemployment compensation is fundamentally different than a Title VII action, and the conclusions of that state agency are in no way binding on the district court." Arnold v. Morton Intern., Inc., 2000 WL 1007176, at *9 (S.D. Ind. 2000),

10

citing McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 798 n.11 (7th Cir. 1997) (noting also that Ind.Code § 22-4-17-12(h) prohibits admitting evidence of unemployment compensation awards for purposes other than those of the administrative agency). Moreover, the undisputed facts do not support Martin's contention that the DOC failed to follow its own policy. As noted above, each instance of unauthorized leave increases the level of potential discipline according to the DOC's policy. This is true even where the unauthorized leave occurs on consecutive days. In addition, the policy allows the DOC to consider prior disciplinary actions when determining the appropriate level of discipline. In short, the DOC's treatment of Martin fell within the bounds of its policy. More to the point, given the record before the Court, a reasonable jury could not find that Martin's performance issues were insufficient to motivate his termination. Accordingly, Martin's race discrimination claim fails for the additional reason that he has not raised a genuine issue of material fact that the DOC's stated reason for his termination is a pretext for race discrimination.

B. **Retaliation.**

A prima facie case of unlawful retaliation may be established directly or indirectly. Stone v. City of Indianapolis Public Util. Div., 281 F.3d 640, 644 (7th Cir. 2002). As explained below, Martin's evidence is insufficient to carry his prima facie burden under either method.

For Martin to survive summary judgment under the direct method, he must present direct evidence[4] that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse

---

[4] Direct evidence is defined "as evidence which, 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 n.6 (7th Cir. 1997) (citation omitted). Moreover, direct evidence "can be an admission of intentional discrimination or a 'mosaic' of circumstantial evidence that directly points to a discriminatory intent." Davis v. Con-Way Transp. Central Express, Inc., 368 F.3d 776, 786 (7th Cir. 2004).

employment action; and (3) there is a causal link between the two. Williams v. Waste Management of Illinois, 361 F.3d 1021, 1031 (7th Cir. 2004). The parties agree that Martin satisfies the first two elements: he filed an EEOC charge alleging that race discrimination caused his first termination and, after his reinstatement, he was terminated for a second time. However, Martin's evidence falls short of establishing a causal connection between the two.

The key inquiry in determining whether a causal connection exists under the direct method is whether the decision maker was aware of the allegations of discrimination at the time of the decision regarding Martin's termination. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004). "[A]bsent such knowledge, there can be no causal link between the two." Id. Moreover, "[i]t is not sufficient that [the decision maker] *could* or even *should* have known about [Martin's] complaints; [the decision maker] must have had actual knowledge of the complaints for [his] decisions to be retaliatory." Id. See also Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000) ("an employer cannot retaliate when it is unaware of any complaints").

Here, it is undisputed that Assistant Superintendent Hanlon made the decision to terminate Martin's second term of employment. Martin, however, provides no admissible evidence -- let alone direct evidence -- that Hanlon actually knew of Martin's previous EEOC charge. Instead, Martin points to his own vague deposition testimony for the proposition that "Meloy 'talked' to Hanlon regarding Martin's first EEOC complaint." [Docket No. 99, p. 9]. It is evident, however, that Martin's testimony is merely vague speculation. Moreover, even if Martin's nebulous testimony were not conjecture, it does not establish that Meloy spoke to Hanlon about Martin's EEOC charge.[5] At a minimum, Martin must produce evidence that would

---

[5]Martin relies on the following discourse from his deposition:

12

support a reasonable inference that Hanlon knew of Martin's allegations of discrimination. Luckie, 389 F.3d at 715. Martin fails in this respect. Accordingly, Martin's retaliation claim fails under the direct method for lack of a causal connection.

Martin fares no better under the indirect method. To establish a prima facie case of retaliation under this method, Martin must demonstrate that: (1) he engaged in statutorily protected activity; (2) he was performing his job according to the DOC's legitimate expectations; (3) despite meeting those expectations; he suffered an adverse employment action; and (4) he was treated worse than similarly situated employees who did not engage in statutorily protected activity. Firestine v. Parkview Health System, Inc., 388 F.3d 229, 233 (7th Cir. 2004). The parties agree that Martin engaged in protected activity and that he suffered an adverse employment action. However, as with his race discrimination claim, Martin has not pointed to admissible evidence that would allow the Court to reasonably infer that similarly situated employees who did not engage in protected conduct were treated more favorably.

Indeed, Martin's only evidence on this issue is the same conclusory deposition testimony and DOC letter discussed above with respect to the similarly situated prong of Martin's race

---

| | | |
|---|---|---|
| Q: | | What's your understanding of how Mr. Malloy was related to the second termination? |
| A: | | They all talked together. |
| Q: | | Okay. Anything else? |
| A: | | No, that's it. |
| Q: | | So I just want to kind of go back to the same question about Mr. Hamlin [sic]. I understand that you think that Mr. Malloy was connected to your second termination; right? |
| A: | | Yes. |
| Q: | | But do you think that Mr. Hamlin [sic], himself, had any reason to discriminate against you based on your race or based on retaliation? |
| A: | | Well, him, no, it's because he didn't even know me. And he never met me before. So he was influenced by whoever. I'm thinking -- whoever. And I'm thinking it was at IYC and then it just led over to RDC. I didn't ask to go to RDC. |

discrimination claim. Such evidence fails to meet Martin's evidentiary burden on his retaliation claim for the same reasons it failed to meet Martin's evidentiary burden on his race discrimination claim. Moreover, neither Martin's cited testimony nor the DOC letter mention whether the individuals Martin claims are similar have engaged in protected activity. Thus, Martin's proposed evidence on this element provides no support for Martin's retaliation claim under the indirect method. Accordingly, summary judgment is appropriate. See Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("Because [the plaintiff] has not put forth competent evidence that he was treated differently than a similarly situated employee outside of either of his protected classes, he has failed to establish a prima facie case [of race discrimination and retaliation] and summary judgment was proper for that reason alone.").

Although the Court need not reach the issue of pretext with respect to Martin's retaliation claim, some comment is required. It is undisputed that the DOC's stated reason for Martin's second termination was due to a substantiated sexual harassment charge against Martin. This is a legitimate non-discriminatory reason for Martin's termination. Martin admits that the "[t]he allegations were ultimately 'substantiated,'" but claims that "suspicious circumstances" surrounded the DOC's findings. [Docket No. 99, pp. 4-5]. Specifically, Martin argues that:

> the "substantiated" report of sexual harassment was of questionable validity. Martin has vehemently asserted that he has never met the alleged victim and there do not appear to be any witnesses interviewed during the course of the investigation.

[Docket No. 99, p. 10]. This does not create an issue of material fact. As noted above, at the pre-disciplinary meeting, the DOC gave Martin an opportunity to be heard on the charges and Martin denied incident. While Martin is correct that there were no witnesses (other than his accuser) to the reported sexual harassment, an employer can reasonably choose to believe one employee over another in matters of discipline. Here, the duty roster indicated that Martin was in the kitchen on the date of the alleged harassment. Accordingly, the Court cannot conclude

14

that it was unreasonable to believe Martin's accuser over Martin.  The Seventh Circuit Court of Appeals has stated on numerous occasions a court is not "a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions."  Appelbaum v. Milwaukee Metro. Sewerage Dist., 340 F.3d 573, 579 (7th Cir. 2003).  Other than his own speculation, Martin provides no other evidence that suggests the DOC's investigation and findings regarding the sexual harassment complaint levied against him was a sham or that the substantiated complaint was not the true reason for Martin's second termination.  Accordingly, even assuming Martin met his prima facie burden, summary judgment is appropriate.

**V.      Conclusion**

For the reasons stated above, the Magistrate Judge recommends that Defendant's motion for summary judgement be GRANTED, and that this action be dismissed with prejudice.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636 (b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.  Dated: 04/13/2005

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

C. Bruce Davidson Jr.
REMOVED PER MISC CASE 04-9
Reviewing Master - Richard Dick
Mitchell Hurst Jacobs & Dick LLP
152 East Washington Street
Indianapolis, IN 46204

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Juliana Beth Pierce
INDIANA STATE ATTORNEY GENERAL
jpierce@atg.state.in.us

Kenneth T. Roberts
ROBERTS & BISHOP
ktrobatty@aol.com

Michael T. Wallace
ROBERTS & BISHOP
mwallace@roberts-bishop.com